ESTADO LIBRE ASOCIADO DE PUERTO RICO
TRIBUNAL DE APELACIONES
PANEL VII

| | | |
|---|---|---|
| KARLA MICHELLE RIVERA LUCIANO<br><br>Apelada<br><br>v.<br><br>LUIS GABRIEL SOTO ACEVEDO<br><br>Apelante | KLAN202500325 | Apelación procedente del Tribunal de Primera Instancia, Sala Superior de Mayagüez<br><br>Caso Núm. MZ2023RF00583<br><br>Sobre: Alimentos |

Panel integrado por su presidenta, la Juez Domínguez Irizarry, el Juez Ronda Del Toro y el Juez Pérez Ocasio

**Ronda Del Toro, Juez Ponente**

## SENTENCIA

En San Juan, Puerto Rico, a 20 de mayo de 2025.

Luis Gabriel Soto Acevedo solicita que revisemos la Sentencia que emitió el Tribunal de Primera Instancia, Sala de Mayagüez, el 13 de marzo de 2025. Mediante esta, el foro primario le ordenó proveer una pensión alimentaria de $630.78 quincenales a favor de su hijo menor, más el 100% de los gastos médicos, escolares y de campamento.

Por las razones que exponemos a continuación *Revocamos* la sentencia apelada.

### I.

El 21 de septiembre de 2023, Karla M. Rivera Luciano (Rivera Luciano o apelada) presentó una petición de alimentos contra el progenitor de su hijo, el señor Luis Gabriel Soto Acevedo (Soto Acevedo o apelante).

El 2 de octubre de 2023, las partes comparecieron, por derecho propio, a una vista ante la Examinadora de Pensiones Alimentarias (Examinadora). En esa etapa, la Examinadora

recomendó una pensión provisional de $342.00 mensuales. En cuanto al padre, tomó como base el ingreso neto de $1,854.00 mensuales.[1] Con ello, el 5 de octubre de 2023, el Tribunal de Instancia emitió una *Resolución* para que la pensión provisional sea pagada a través de la Administración para el Sustento de Menores (ASUMe). Además, le concedió quince (15) días al señor Soto Acevedo para presentar su Planilla de Información Personal y Económica (PIPE). El Foro Primario señaló la vista final ante la Examinadora de Pensiones Alimentarias para el 20 de diciembre de 2023.[2] La referida Resolución fue notificada al señor Soto Acevedo a la dirección electrónica en LGSOTO2610@GMAIL.COM.[3]

A la vista del 20 de diciembre de 2023, comparecieron ambas partes, pero esta se transfirió para el 21 de febrero de 2023 [sic 2024], porque el demandado no había presentado la PIPE. Se le concedieron quince (15) días adicionales para cumplir.[4]

Luego de otras incidencias, la vista del 21 de febrero de 2024, se transfirió para el 25 de abril de 2024.[5] La referida Acta fue notificada al señor Soto Acevedo a LGSOTO2610@GMAIL.COM. [6] Para esta vista se emitió una notificación al señor Soto Acevedo a la dirección en HC 01 Box 5160 Hormigueros PR 00660 y a LGSOTO2610@GMAIL.COM.[7]

El 18 de marzo de 2024, la demandante, por conducto de su abogada, interpuso una *Moción en Solicitud de Orden y Otros Extremos*. Allí informó que el demandado no había presentado la PIPE.[8]

---

[1] Apéndice del recurso, pág. 44.
[2] Apéndice del recurso, págs. 47-50.
[3] Apéndice del recurso, pág. 46.
[4] Apéndice del apelante, pág. 51.
[5] Apéndice del apelante, pág. 55.
[6] Apéndice del apelante, pág. 56.
[7] Verificado en el Sistema Unificado de Manejo y Administración de Casos, (SUMAC), entrada 14.
[8] Apéndice del apelante, págs. 57-58.

En respuesta a esta petición, el 19 de marzo de 2024, el foro primario le ordenó al demandado someter su PIPE en o antes de diez (10) días finales, so pena de sanciones. La orden fue notificada al demandado al correo electrónico en LGSOTO2610@GMAIL.COM.[9] El 17 de abril de 2024 el Tribunal emitió otra orden para que el demandado sometiera la PIPE en diez (10) días finales, con el apercibimiento de sanciones.[10]

A la vista del 25 de abril de 2024, el señor Soto Acevedo no compareció, por ello, la Examinadora recomendó sanciones para Soto Acevedo.[11] En atención a lo anterior, el 25 de abril de 2024, el Tribunal de instancia emitió otra *Resolución* en la cual le concedió diez (10) días a Soto Acevedo para pagar $100.00 en concepto de sanciones a favor del Estado, más el pago del arancel de suspensión. Le ordenó, a su vez, que en el término de treinta (30) días, pagara $300.00 en concepto de honorarios de abogado. Pautó la vista final ante la Examinadora para el 2 de julio de 2024.

Entretanto, a petición de la demandante, el 26 de abril de 2024, el Tribunal Primario le ordenó al patrono del demandado, Departamento de Corrección y Rehabilitación, que sometiera la evidencia sobre los pagos que le realizaba a Soto Acevedo.[12]

El 6 de mayo de 2024, la demandante informó que el Departamento de Corrección y Rehabilitación le remitió el desglose de pagos del demandado. Incluyó la Certificación de Salarios Devengados de Soto Acevedo desde enero de 2023 al 30 de abril de 2024, y el Comprobante de Retención W-2 del 2023.[13]

Mientras, a la vista del 2 de julio de 2024, comparecieron ambas partes. En el *Acta*, la Examinadora informó que revisó la

---

[9] Apéndice del recurso, pág. 59.
[10] SUMAC, entrada 20.
[11] SUMAC, entrada 24.
[12] SUMAC, entrada 28.
[13] SUMAC, entrada 29.

orden de alimentos provisional, a tenor con las nuevas Guías Mandatorias, efectivas el 16 de marzo de 2024. Utilizó el ingreso neto promedio de $2,192.18 dólares que devengó Soto Acevedo. Con ello y, el número de dependientes y sus edades, recomendó mantener la pensión provisional de $342.00.[14] El 2 de julio de 2024, el Tribunal de Instancia mantuvo la pensión provisional por $342.00 y le concedió quince (15) días a Soto Acevedo para que presentara la PIPE. Pautó la vista final para el 9 de octubre de 2024.[15]

Esta vista se recalendarizó para el 8 de noviembre de 2024. Para ello se expidieron las correspondientes citaciones. Al demandado Soto Acevedo se le notificó en HC 01 Box 5160 Hormigueros PR 00660 y a LGSOTO2610@GMAIL.COM.[16]

Llegado el 8 de noviembre de 2024, el señor Soto Acevedo no compareció. Por eso, la Examinadora recomendó que se le concediera el término final de siete (7) días para presentar la PIPE, so pena dar por admitida su capacidad económica. El *Acta* fue notificada al demandado a su correo electrónico lgsoto2610@gmail.com.[17] De lo acontecido en esta vista, el 12 de noviembre de 2024, el Foro Primario emitió la siguiente Orden:[18]

> Atendida la recomendación de la Examinadora de Pensiones Alimentarias, el Tribunal aprueba la misma y en consecuencia, dispone lo siguiente:
>
> Tiene el Sr. Luis G. Soto Acevedo el término final de 7 días para presentar su planilla PIPE. **Se le apercibe al demandado Soto que, de no presentarse la PIPE, el Tribunal dará por admitida su capacidad económica y la Examinadora de Pensiones Alimentarias recomendará la pensión final de acuerdo a lo resuelto por el Tribunal Supremo de Puerto Rico en Chévere v. Levis II, 152 DPR 492 (2000) y los casos subsiguientes resueltos sobre aceptación de capacidad.**

---

[14] SUMAC, entrada 29.
[15] SUMAC, entrada 36.
[16] SUMAC, entradas 39 y 40.
[17] Apéndice de la apelada, págs. 94-95, SUMAC, entrada 44.
[18] Apéndice de la apelación, pág. 60.

La vista final de alimentos se celebrará el 13 de diciembre de 2024 a las 9:30 de la mañana ante la Examinadora de Pensiones Alimentarias. Es mediante videoconferencia. (Énfasis nuestro).

Surge de la notificación la dirección de correo electrónico del señor Soto Acevedo en LGSOTO2610@GMAIL.COM.[19]

De otro lado, a petición de la señora Rivera Luciano, el 13 de noviembre de 2024, el Tribunal Primario emitió una *Resolución-Vista Desacato* para la celebración de una vista para el 25 de noviembre de 2024.  Esta resolución se le dirigió a Soto Acevedo al correo electrónico en LGSOTO2610@GMAIL.COM.[20]  Para esta vista, la Sala de Instancia emitió una *Orden para Mostrar Causa* dirigida a Soto Acevedo. La orden fue dirigida al señor Soto Acevedo, Urb. San Carlos, 130 Calle San Francisco, Aguadilla, PR, (787) 400-6456.[21]

A su vez, el 14 de noviembre de 2024 el Tribunal de Instancia emitió una *Notificación-Citación* para que Soto Acevedo compareciera a la vista del 13 de diciembre de 2024.  También se emitió una notificación electrónica a LGSOTO2610@GMAIL.COM.[22]

Mientras, el 21 de noviembre de 2024, la demandante Rivera Luciano presentó una *Moción en Solicitud de Orden y Otros Extremos* para que el tribunal admitiese la capacidad económica del demandado y que se fijara una pensión final.[23]

A la vista de desacato, pautada para el 25 de noviembre de 2024, Soto Acevedo no compareció.  Surge de la *Minuta* que la señora Rivera Luciano solicitó que, para la próxima vista pautada para el 13 de diciembre de 2024, ante la Examinadora de Pensiones, se dilucidara la capacidad económica del señor Soto Acevedo.  En cuanto a este asunto, el foro primario informó que,

---

[19] Apéndice de la apelación, pág. 61.
[20] SUMAC, entrada 46.
[21] Apéndice de la apelación, pág. 65-66; SUMAC, entrada 47.
[22] SUMAC, entrada 48.
[23] Apéndice de la apelación, págs. 62-63.

"**acoge la súplica de la licenciada Ramírez y que en el próximo señalamiento se entienda la capacidad económica para pagar al promovido.**"[24] El foro primario también informó que, para noviembre de 2024, Soto Acevedo tenía una deuda en de $412.00.[25] (Énfasis nuestro).

Conforme a lo anterior, el día 25 de noviembre de 2024, la Sala Primaria emitió otra *Orden para Mostrar Causa* contra el Sr. Soto Acevedo a sus direcciones en: Urb. San Carlos 130 Calle San Francisco Aguadilla, PR; Complejo Correccional Ponce, Unidad Canina, El Tuque, Sector Las Cucharas Carr. #2 Ponce, PR. En esta se le citó para una vista a celebrarse el 3 de febrero de 2025.[26]

A la vista del 13 de diciembre de 2024, el señor Soto Acevedo tampoco asistió. El *Acta* de esta vista fue emitida y notificada el 13 de marzo de 2025.[27]

Entretanto, el 3 de febrero de 2025 se celebró la vista de desacato ante el juez de instancia. El demandado Soto Acevedo compareció y ofreció sus explicaciones. El Tribunal de Instancia tomó conocimiento que el 31 de enero de 2025 la promovente recibió $500.00 extrajudicialmente y le requirió al promovido que pagara los $674.00, correspondientes a $100.00 de las sanciones; los $20.00 en sellos de suspensión, pagara el remanente de la deuda y los honorarios de abogado. Se le ordenó también que, notificara su nuevo número de teléfono cuando lo obtuviera.[28]

El 11 de febrero de 2025, Soto Acevedo informó que pagó la sanción de $100.00 y el sello de suspensión.[29]

---

[24] Apéndice de la apelación, pág. 68.
[25] Apéndice de la apelación, págs. 67-68.
[26] Apéndice de la apelación, págs. 69-70; SUMAC, entrada 51.
[27] Apéndice de la apelación, pág. 6-17.
[28] Apéndice de la apelación, págs. 73-74.
[29] Apéndice de la apelación, págs. 71-72.

El 18 de febrero de 2025, Rivera Luciano indicó que el demandado pagó la sanción $120.00, más los $554.00 restantes.[30] Luego, el 13 de marzo de 2025, acreditó que Soto Acevedo pagó los honorarios de abogado.[31]

Según adelantáramos, en cuanto a la vista del 13 de diciembre de 2024, el 13 de marzo de 2025, la Examinadora emitió el *Acta*[32]. En esta, en síntesis, informó lo siguiente:

> 6.El demandado Soto Acevedo nunca presentó su planilla PIPE, a pesar de los múltiples términos concedidos por el Tribunal para que cumpliera con esta orden.

> 7.Así las cosas, **ante el reiterado incumplimiento de la parte alimentante**, el 25 de noviembre de 2024 el Tribunal dio por admitida la capacidad económica del Sr. Luis Soto Acevedo.

La Examinadora de Pensiones agregó lo siguiente:

> En lo que concierne a los alimentantes que han optado por aceptar capacidad económica, el Tribunal Supremo de Puerto Rico resolvió en el caso Chévere v. Levis, 2000 TSPR 42, (2000), que un alimentante queda exento del requisito de someter información sobre sus ingresos **si acepta** que tiene capacidad económica para proveer alimentos, quedando pendiente de resolver solamente las necesidades económicas del alimentista y así fijar la pensión alimentaria que le correspondería pagar a quien aceptó la capacidad económica. En estos casos no se aplican las Guías.

Tras evaluar los gastos y necesidades del menor, la Examinadora de Pensiones manifestó lo siguiente:

> 60. En el presente caso, se reclaman alimentos para un menor de 4 años. El Tribunal resolvió dar por admitida la capacidad económica del demandado Soto Acevedo. La suscribiente evaluó los gastos y necesidades del menor, tomando en consideración su bienestar y los principios de solidaridad humana que fundamentan el derecho de alimentos.

> Analizados los gastos razonables y las necesidades del alimentista, se recomienda que el Sr. Luis G. Soto Acevedo pague $1,261.56 dólares mensuales a razón de $630.78 dólares quincenales en concepto de

---

[30] SUMAC, entrada 59.
[31] SUMAC, entrada 63.
[32] Apéndice de la apelación, págs. 6-17.

pensión alimentaria final para beneficio de [NFSR], de 4 años, efectiva al 1 de diciembre de 2024.

[…]

La ASUME ajustará la cuenta de las partes considerando que entre el 1 de septiembre de 2024 y el 30 de noviembre de 2024 la obligación alimentaria del Sr. Soto ascendía a $1,245.66 dólares mensuales, a razón de $622.83 dólares quincenales. Además, ASUME considerará que entre el 21 de septiembre de 2023 y el 31 de agosto de 2024, la obligación alimentaria del Sr. Soto ascendía a $1,311.34 dólares mensuales a razón de $655.67 dólares quincenales.

También recomendó que Soto Acevedo pagara el 100% de todo gasto médico no cubierto por el plan médico; el 100% de la matrícula, cuotas, libros, uniformes y efectos escolares y el 100% del campamento de verano, en junio y julio de cada año, según surja la necesidad.

A tenor con la recomendación, el 13 de marzo de 2025, la Sala de Instancia dictó la *Sentencia* aquí apelada.

En desacuerdo, el 28 de marzo de 2025, Soto Acevedo solicitó *Reconsideración*.[33]

El 1ro de abril de 2025, Rivera Luciano se opuso a la reconsideración. En respuesta, el 2 de abril de 2025, el Tribunal de Instancia notificó una *Resolución sobre Reconsideración* para denegar la reconsideración peticionada. Fundamentó su decisión en que el expediente demuestra:

[U]na actitud contumaz y temeraria del Alimentante al proceso judicial, y su propósito, así como un patrón reiterado y constante de incumplimiento a las órdenes y sanciones emitidas por el Tribunal y aquellas ordenes emitidas por la EPA. No puede pasar desapercibido las innumerables oportunidades concedidas al Alimentante para que cumpliera y a pesar de ello, eligió no cumplir.[34]

Aun insatisfecho, Soto Acevedo, acudió a este foro intermedio. En el recurso, alegó que incidió el Tribunal de Primera Instancia Sala de Mayagüez en lo siguiente:

---

[33] Apéndice de la apelación, págs. 18-28.
[34] Apéndice de la apelación, págs. 30-31.

**Primero**: Al dar por notificada una orden bajo el sistema de SUMAC por mensaje de texto, ello en violación al debido proceso de ley en su vertiente procesal.

**Segundo**: Al aplicar la doctrina del caso Chévere v. Levis como sanción ante el incumplimiento con las órdenes para presentar la Planilla Información Personal y Económica.

**Tercero**: Al confundir la doctrina de imputación de ingresos y capacidad para generar ingresos bajo la ley de sustento de menores con la Doctrina de Capacidad del caso de Chévere.

**Cuarto**: Al desviarse de la aplicación del derecho en cuanto a fijación de pensión alimentaria según establecido en la Ley de Sustento de Menores.

Junto con la Apelación, Soto Acevedo presentó una *Moción en Auxilio de la Jurisdicción* para que se paralizaran los procedimientos ante el foro de instancia. Mediante Resolución emitida el 21 de abril de 2025, decretamos la paralización, limitada a la cuantía asignada como determinación de pensión alimentaria. También, le ordenamos a la Secretaría de la Sala de Mayagüez, que certificara todas las direcciones, correos electrónicos y teléfonos a los que se le dirigieron las notificaciones al apelante.

En respuesta, Rivera Luciano presentó su *Alegato en Oposición al Recurso de Apelación.* De igual manera, la Secretaria Interina del Tribunal de Mayagüez sometió una *Comparecencia Especial*. Con el beneficio de los escritos, disponemos*.*

## II.

## A.

Nuestra jurisdicción reconoce que los menores tienen un derecho fundamental a recibir alimentos que emana de la cláusula constitucional del derecho a la vida consagrado en la Carta de Derechos de la Constitución de Puerto Rico. Díaz Rodríguez v. García Neris, 208 DPR 706, 717 (2022); De León Ramos v. Navarro Acevedo, 195 DPR 157, 169 (2016). Reiteradamente, se

ha expresado que la obligación de todo progenitor de proveer alimentos a sus hijos e hijas está revestida del más alto interés público. James Soto v. Montes James, 213 DPR 718, 729 (2024); Díaz Rodríguez v. García Neris, *supra*, pág. 718. El interés principal es el bienestar del menor. Díaz Rodríguez v. García Neris, *supra*; Santiago, Maisonet v. Maisonet Correa, 187 DPR 550, 559 (2012). A tenor con ello, el Artículo 590 del Código Civil de 2020, establece que las madres y los padres, por razón de la patria potestad, tienen, entre otros, el deber de alimentarlo y proveerle lo necesario para su desarrollo y formación integral. 31 LPRA sec. 7242.

Por su parte, el Artículo 653 del Código Civil define alimentos como todo lo indispensable para el sustento, la vivienda, vestimenta, recreación y asistencia médica, según la posición social de la familia, 31 LPRA sec. 7531. Ese término también comprende la educación e instrucción del alimentista, cuando este es menor de edad. Íd. De forma similar, lo define el Artículo 2 (7) de la Ley Orgánica de la Administración para el Sustento de Menores (Ley de ASUMe), Ley Núm. 5 de 30 de diciembre de 1986, según enmendada. 8 LPRA sec. 501 (7). Igualmente, lo precisa el Artículo 7 (5) del Reglamento 8529, conocido por *Guías Mandatorias para computar las pensiones alimentarias en Puerto Rico,* (Guías Mandatorias), vigente a la fecha en que se presentó el presente caso.[35]

Como la obligación de alimentar al menor es **inherente** a la maternidad y la paternidad, esta obligación es personal de cada

---

[35] El referido Reglamento quedó derogado por el Reglamento Núm. 9535 del 15 de febrero de 2024, denominado *Guías Mandatorias para Fijar y Modificar Pensiones Alimentarias en Puerto Rico*. El mismo anuló las anteriores Guías Mandatorias. Este aplicará a todos los casos pendientes de adjudicación, con la salvedad de que para la fijación, revisión y modificación de pensiones alimentarias correspondientes a periodos previos a la vigencia del nuevo Reglamento aplicarán las normas dispuestas en el Reglamento Núm. 8529, *supra*. Ver Artículo 26 del Reglamento 9535.

uno de los excónyuges por lo que debe ser satisfecha del propio peculio y de forma **proporcional a sus recursos y a la necesidad del menor** una vez decretado el divorcio. Díaz Rodríguez v. García Neris, *supra*; Pesquera Fuentes v. Colón Molina, 202 DPR 93, 108 (2019). Este esquema conlleva hacer un balance entre los intereses del menor y la **capacidad económica** de los responsables de costear sus necesidades. Pesquera Fuentes v. Colón Molina, *supra*. La determinación de la cuantía de los alimentos corresponde al prudente arbitrio del juzgador, quien debe velar porque la cuantía que se establezca cumpla con el principio de proporcionalidad. Santiago, Maisonet v. Maisonet Correa, *supra,* pág. 562*.*

**B.**

Para fijar la pensión, el Artículo 16 de la Ley de ASUMe, 8 LPRA sec. 515, provee el descubrimiento compulsorio de información. En lo pertinente, este indica así:

> En los procedimientos judiciales relacionados con pensiones alimenticias, el descubrimiento sobre la situación económica del alimentante y alimentista será compulsorio.
>
> De solicitarlo cualesquiera de las partes, la presentación de una copia certificada de la planilla de contribución sobre ingresos, así como una certificación patronal del sueldo o salario, será compulsoria.
>
> La Oficina de Administración de los Tribunales preparará un formulario para servir de guía respecto de la información mínima requerida sobre la situación económica de las partes, las necesidades del alimentista y la capacidad de pago del alimentante. El formulario completado y juramentado, u otro documento similar, también juramentado, que contenga toda la información requerida deberá radicarse en la secretaría del tribunal y notificarse a la otra parte con antelación a la vista y sujetará al declarante a las penalidades dispuestas para el delito de perjurio.
> La radicación del formulario no constituirá excusa respecto de la obligación de las partes de revelar todas las circunstancias que permitan determinar su particular situación económica.

La radicación de este formulario o de otro documento similar no constituirá impedimento para el uso de los mecanismos de descubrimiento de prueba, según establecido en las Reglas de Procedimiento Civil, Ap. V del Título 32. No obstante, la decisión de usar los mecanismos de descubrimiento de prueba no será razón para suspender la vista señalada por el secretario del tribunal, según establecido en el Artículo 15 de esta ley (8 LPRA sec. 514). En esa vista se determinará el monto de una pensión provisional a ser recomendada al juez y se señalará nueva vista para la fecha más próxima viable. La pensión provisional así fijada permanecerá en vigor hasta que el tribunal dicte una nueva resolución u orden.

Cuando se utilicen los mecanismos regulares de descubrimiento de prueba, no se concederán prórrogas para cumplir con los términos establecidos por las Reglas de Procedimiento Civil, Ap. V del Título 32, excepto mediante la demostración rigurosa de justa causa.

Las sanciones provistas en las Reglas de Procedimiento Civil, Ap. V del Título 32, por negarse a descubrir o por contestar en forma evasiva las preguntas formuladas como parte del procedimiento de descubrimiento de prueba, serán aplicadas con todo el rigor, incluyendo la imposición de honorarios de abogado.

En cuanto a las sanciones por incumplimiento, la Regla 44.2 de Procedimiento Civil, 32 LPRA Ap. V, R. 44.2, establece, en lo aquí pertinente, como sigue:

El tribunal podrá imponer costas interlocutorias a las partes y sanciones económicas en todo caso y en cualquier etapa a una parte o a su representante legal por conducta constitutiva de demora, inacción, abandono, obstrucción o falta de diligencia en perjuicio de la eficiente administración de la justicia. […]

Asimismo, la Regla 34.3 de Procedimiento Civil, 34 LPRA Ap. V, R. 34.3, fija las consecuencias cuando una parte rehúsa a cumplir con el descubrimiento de pruebas. Entre ellas, se encuentra el desacato, así como, todas aquellas órdenes que sean justas.

Ahora bien, existe una excepción al requisito de descubrir información sobre la situación económica. El alimentante queda exento del requisito de someter información sobre sus ingresos en

la planilla de información personal y económica, **si acepta** que tiene capacidad económica para proveer alimentos. Chévere v. Levis I, *150 DPR* 525, 545 (2000), además*,* Díaz Rodríguez v. García Neris, *supra,* pág. 719*.* Por lo tanto, en esos casos solo resta determinar la suma justa y razonable que ha de ser impuesta como pensión. Díaz Rodríguez v. García Neris, *supra*, pág. 719. Esto se hará a la luz de la evidencia presentada por los menores con relación a sus necesidades y la situación económica de la madre*.* Chévere v. Levis, *supra.*

Por otro lado, nuestro ordenamiento jurídico también reconoce ciertas instancias en las que se le imputará ingresos al alimentante. El Artículo 11 de la Ley de ASUMe, relacionado al procedimiento administrativo expedito, provee que se puede imputar ingresos a, "la parte que se negare a descubrir la información dentro del término requerido o no contestare debidamente o con evasivas, el ingreso promedio del oficio, ocupación, profesión del alimentante, según toda la prueba disponible, incluyendo estimados, estudios y proyecciones de ingresos, gastos, estilo de vida y cualquier otra prueba pertinente y continuar con el procedimiento administrativo autorizado por esta Ley, incluyendo hacer una determinación en rebeldía." 8 LPRA sec. 510. Así mismo, el Artículo 10 (1) (a) de las Guías Mandatorias, Reglamento 8529[36], disponían que, el juzgador le imputará ingresos a la persona alimentante cuando, entre otros, "existan indicios o señales de que el ingreso es mayor al que la persona informa".

En estos casos, para fijar una pensión el Tribunal de Instancia puede tomar en cuenta, "el estilo de vida del alimentante, sus propiedades, su profesión y preparación

---

[36] Artículo 8 del Reglamento 9535.

académica, su historial de empleo y de ingresos, su experiencia laboral, su capacidad y aptitud para generar ingresos y otros factores similares para imputarle ingresos al alimentante razonablemente, más allá de lo que éste alegue o intente probar sobre el particular." Argüello v. Argüello, 155 DPR 62, 74 (2001), citando a López v. Rodríguez, 121 DPR 23, 33 (1988). El Tribunal Supremo ha reiterado que se fije la pensión alimentaria, tomando en consideración la condición económica y el estilo de vida del alimentante, en unión a las necesidades de los alimentistas, incluyendo en estas el estilo de vida al cual estaban acostumbrados. Díaz Rodríguez v. García Neris, *supra, pág. 719,* Santiago, Maisonet v. Maisonet Correa, *supra*, pág. 566, citando a Chévere Mourino v. Levis Goldstein, 152 DPR 492, 502, 505 (2000).

### C.

El Artículo II, Sec. 7, de la Constitución de Puerto Rico prohíbe que cualquier persona sea privada de su libertad o propiedad sin un debido proceso de ley. LPRA, Tomo 1. Este derecho está protegido de igual forma por la Quinta y Decimocuarta Enmiendas de la Constitución de Estados Unidos. LPRA, Tomo 1. A la Orden Shopping, S.E. v. A.E.E., 213 DPR 546, 555-556 (2024); PVH Motor v. ASG, 209 DPR 122, 130-131 (2022). Para salvaguardar el debido proceso de ley, se exige que, como mínimo, en todo proceso adjudicativo se realice una notificación adecuada. PVH Motor v. ASG, *supra*, pág. 131; Vázquez González v. Mun. San Juan, 178 DPR 636, 643 (2010). Ello es así pues la falta de una notificación adecuada y a tiempo de cualquier resolución, orden o sentencia, podría afectar el derecho de una parte a cuestionar la resolución, orden o sentencia dictada, enervando así las garantías del debido proceso

de ley. <u>Caro v. Cardona</u>, 158 DPR 592, 599 (2003); <u>Falcón Padilla v Maldonado Quirós</u>, 138 DPR 983, 990 (1995).

En cuanto a las notificaciones, las Directrices Administrativas para la Presentación y Notificación Electrónica de Documentos Mediante el Sistema Unificado de Manejo y Administración de Casos y el Formulario Interactivo (Según Enmendadas), provee para la notificación electrónica, a saber:

IX. NOTIFICACIONES ELECTRÓNICAS

1. Se notificarán por **medios electrónicos las órdenes**, resoluciones, decretos y sentencias que emita el Tribunal, así como cualquier documento que el Secretario o la Secretaria deba notificar durante un procedimiento civil, o proceso apelativo, a menos que por orden judicial se disponga de otra manera. A través del SUMAC y del Formulario Interactivo, se notificará cada documento a la dirección electrónica de la abogada o del abogado registrada que surge del RUA para recibir notificaciones y para los y las litigantes por derecho propio, a aquel correo electrónico registrado en el sistema.

2. […]

3. La notificación electrónica contendrá la fecha de archivo en autos de copia de la notificación de toda orden, resolución o sentencia, la cual será equivalente a la fecha de envío de la notificación por el SUMAC. Esta fecha se indicará en el expediente electrónico.

4. Todo escrito que por orden judicial deba notificarse por otros medios se notificará por correo regular a la última dirección que se haya consignado en el expediente electrónico por las partes o sus representantes legales.

[…]

6. Si una de las partes en el proceso judicial comparece por derecho propio y consta su dirección de correo electrónico en el sistema, la presentación electrónica del documento constituirá la notificación que debe efectuarse entre partes. […]

[……..] (Énfasis suplido).

### III.

En el primer señalamiento de error, el apelante alega que las notificaciones del tribunal se le enviaban por mensaje de texto, con el enlace para acceder a la notificación. Mencionó que en

ocasiones se podía entrar al documento y en otras no. Señaló que, de la minuta de la vista de noviembre 2024, se registró que el celular del apelante estaba desconectado. Además, que en las veces que fue citado personalmente, compareció a las vistas. Indicó que el Reglamento del Sistema Unificado de Manejo y Administración de Casos (SUMAC) no autoriza la notificación por texto.

La apelada alegó que el demandado fue notificado a través del correo electrónico que este proveyó en: lgsoto2610@gmail.com. Aseveró que ella también le enviaba mensajes de texto recordándole las videoconferencias y comparecencias. Que el 13 de diciembre de 2024, día de la vista, las partes se comunicaron por texto y la apelada le recordó al demandado de la vista que se celebraría a las 9:30 am, pero aun así, este no compareció.[37]

Evaluamos este señalamiento de error en conjunto a la *Comparecencia Especial* de la Secretaria Regional interina. Esta certificó la forma en que se le dirigieron las notificaciones a Soto Acevedo. De este documento pudimos constatar que, en efecto, las notificaciones fueron dirigidas a las direcciones que obraban en el récord, a los teléfonos que este brindó y al correo electrónico de Soto Acevedo en: **lgsoto2610@gmail.com**.

Nuestro estado de derecho reconoce la notificación por correo electrónico, a tenor con el inciso IX (1) de las Directrices Administrativas de SUMAC. Este dispone que se "notificarán por **medios electrónicos las órdenes**, **resoluciones, decretos y sentencias que emita el Tribunal**, así como cualquier documento que el Secretario o la Secretaria deba notificar durante un procedimiento civil, o proceso apelativo, a menos que por

---

[37] Apéndice de la apelada, págs. 106-108.

orden judicial se disponga de otra manera." Agrega que, "a través del SUMAC y del Formulario Interactivo, se notificará cada documento a la dirección electrónica de la abogada o del abogado registrada que surge del RUA para recibir notificaciones y para los y **las litigantes por derecho propio, a aquel correo electrónico registrado en el sistema**." (Énfasis nuestro). A tenor con las directrices de SUMAC, el correo electrónico es el medio correcto de notificación.

Al evaluar los escritos de las partes y la normativa aplicable en cuanto a la notificación a través del sistema de SUMAC, se concluye que el apelante fue debidamente notificado de las incidencias del caso a su dirección electrónica en lgsoto2610@gmail.com. Pudimos corroborar que desde la primera comparecencia de las partes, en la vista del 2 de octubre de 2023, la dirección de correo electrónico que surgía del expediente era: lgsoto2610@gmail.com.

En el recurso ante nos, el apelante no cuestionó que ese correo electrónico estuviese incorrecto. El foro primario le notificó al apelante la Resolución inicial sobre fijación de pensión alimentaria provisional y las determinaciones posteriores a esa dirección. Por tanto, independientemente de las notificaciones adicionales por texto, el foro primario cumplió con su encomienda de notificación mediante la dirección de correo electrónico que surgía del expediente. El primer error no se cometió.

En los siguientes señalamientos de error, el apelante indicó que el foro primario erró al imponerle, como sanción, la aceptación de capacidad económica. Señaló que esa medida es aplicable cuando el alimentante así lo solicita voluntariamente porque admite que cuenta con medios suficientes. A su vez, señaló que el juzgador puede imputar ingresos, a tenor con el Artículo 11 de

la Ley de ASUMe y el Artículo 10 de las Guías Mandatorias, Reglamento 8529 (actual Artículo 8 del Reglamento 9535). Indicó que, al imputar ingresos, el juez puede tomar en cuenta el estilo de vida del alimentante, su profesión, preparación académica y otros factores que se estimen razonables, más allá de lo que el alimentante alegue o intente probar.[38] Aceptó que incumplió con presentar la PIPE, pero la ley no faculta al foro primario a imponer como sanción la capacidad económica del caso de *Chévere v. Levis*, *supra*. Agregó que sus ingresos ya estaban ante la consideración del foro primario, pues en dos ocasiones se le fijó una pensión provisional.

La apelada, por su parte, aduce que el Tribunal no aplicó *Chévere v. Levis*, como sanción *per se*, sino como guía para ilustrar las consecuencias del incumplimiento reiterado con las órdenes judiciales. Indicó que se justificaba la imposición de sanciones, incluyendo la fijación de pensión sin la colaboración del demandado. Señaló que el tribunal actuó dentro de su competencia y cumplió con su obligación de salvaguardar los intereses del menor.

Revisamos.

Del tracto procesal aquí reseñado, trasciende que el Tribunal de Instancia emitió, al menos siete (7) órdenes para que el demandado supliera la PIPE y este no cumplió. Este hecho no está en controversia. Ahora bien, trasciende del expediente que ante los incumplimientos el Foro Primario sancionó al demandado con imputarle capacidad económica. Surge de la *Sentencia* que revisamos que, para imponer la pensión alimentaria, la Sala de Instancia acogió el Acta que emitió la Examinadora de Pensiones el 13 de marzo de 2025. En el *Acta*, la Examinadora informó que

---

[38] En su argumento, aludió a *Argüello v. Argüello*, 155 DPR 62, 74 (2001).

el 25 de noviembre de 2024, el tribunal dio por admitida la capacidad económica del señor Soto Acevedo. No obstante, esa determinación no surge de las órdenes del tribunal. Lo que el Tribunal Primario indicó en la *Resolución* que emitió el 25 de noviembre de 2024, fue que, a petición de la demandante, en el próximo señalamiento se dilucidará la capacidad económica de Soto Acevedo. Así que, esa evaluación se debía realizar en la vista del 13 de diciembre de 2024.

De otro lado, reconocemos que el foro primario puede emitir las sanciones necesarias, con el fin de que las partes cumplan con su deber procesal de proveer la PIPE. Sin embargo, el concepto de capacidad económica, tal cual aplicado en la Sentencia de alimentos, es improcedente como sanción. Nuestro estado de derecho claramente establece que **la capacidad económica** es aplicable cuando el alimentante **así lo acepte voluntariamente**.

Cuando esto ocurre, procede aplicar una suma justa y razonable de pensión, conforme las necesidades del alimentista y no es requerido el descubrimiento de la información económica. En el caso de marras no surge del expediente que el alimentante hubiese aceptado voluntariamente su capacidad económica. Esto nos mueve a dejar sin efecto la Sentencia aquí apelada mediante la cual se le fijó una pensión al demandado de $630.78 quincenales ($1,261.06 mensuales) y cubrir el 100% de los gastos del menor bajo el concepto de capacidad económica.

Aun más, la determinación de aceptación de capacidad económica es contraria a lo que refleja el expediente. Surge de las actas que emitió la Examinadora de Pensiones Alimentarias que el demandado, las veces que compareció, reveló sus ingresos. Con ello fue que se le impuso una pensión provisional. El

expediente también contiene el Comprobante de Retención W-2 del año 2023 de Soto Acevedo, así como la Certificación de Salarios Devengados que emitió el patrono del demando. Esta certificación cubría el período entre enero de 2023 al 30 de abril de 2024. Con esa información se actualizó la pensión provisional. Por lo que, aun cuando el demandado incumplió con su obligación de suplir la PIPE, de sus comparecencias y del expediente trascendía parte de su información económica.

Ahora bien, ante el reiterado incumplimiento de Soto Acevedo con suplir la PIPE y ante sus continuas incomparecencias, el Tribunal de origen podía aplicar aquellas medidas necesarias con el fin de fijar una cuantía de alimentos razonable. El Artículo 11 de ASUMe provee que, se le podrá imputar a la parte que se negare a descubrir información dentro del término requerido o que no contestare debidamente o con evasivas, el ingreso promedio del oficio, ocupación, profesión del alimentante. 8 LPRA sec. 510. De igual forma, el Tribunal Primario puede emitir otras sanciones según lo permita nuestro ordenamiento jurídico. Lo que no le es permitido es que decrete la capacidad económica de una parte, como sanción, pues este concepto requiere la voluntariedad del alimentante. Nuestro expediente no contiene esa declaración.

Por tal razón, procede dejar sin efecto, la Sentencia aquí apelada, mediante la cual la sala de origen le imputó al aquí apelante la aceptación de la capacidad económica y en consecuencia, le impuso una pensión alimentaria al menor, más el 100% de los gastos.

**IV.**

Por las razones antes expresadas, se revoca la Sentencia apelada. Se remite el expediente al foro primario para la continuación de los procedimientos.

Lo acordó y manda el Tribunal, y certifica la Secretaria del Tribunal de Apelaciones.


Lcda. Lilia M. Oquendo Solís
Secretaria del Tribunal de Apelaciones